IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUBERT JERZY MIASIK, | ) | |
| | ) | |
| Petitioner, | ) | No. 09 cv 03109 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| AGNIESZKA MIASIK, n/k/a | ) | |
| AGNIESZKA MORCHED | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**OPINION AND ORDER**

Petitioner Hubert Jerzy Miasik ("Hubert") filed a verified petition seeking the return of his child, Julia Kinga Miasik ("Julia"), to Poland pursuant to the International Child Abduction Remedies Act, codified at 42 U.S.C. §§ 11601 et seq. ("ICARA"). ICARA implements the Hague Convention on the Civil Aspects of International Child Abduction (hereinafter, "the Convention"), T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980), reprinted at 51 Fed. Reg. 10494 (Mar. 26, 1986), to which the United States and Poland are signatories. The court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 11603(a). Respondent Agnieszka Miasik Morched ("Agnieszka"), Julia's mother, moves to dismiss the petition under Fed. R. Civ. P. 12(b)(6) and, alternatively, for a more definite statement under Fed. R. Civ. P. 12(e).[1] For the reasons stated below, Agnieszka's motion [#25] is denied.

---

[1] Sections III and IV of the motion argue for summary judgment under Fed. R. Civ. P. 56(b). These arguments will not be addressed because counsel for Agnieszka withdrew them in court on July 21, 2009. *See* Minute Order, July 21, 2009 (Docket No. 24).

1

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). Factual allegations must, however, be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-236 (3d ed. 2004)); *see also Ashcroft* v. *Iqbal*, — U.S —, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009) ("Twombly expounded the pleading standard for all civil actions") (quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citations omitted).

In addition to the pleading requirements of the Federal Rules of Civil procedure, the Convention requires that particular information concerning the child be provided in the petition.[2]

---

[2] The application [for return of the child] shall contain - -

(a) information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;
(b) where available, the date of birth of the child;
(c) the grounds on which the applicant's claim for return of the child is based;
(d) all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by --

"[T]he petition for return should allege that the child was wrongfully removed or retained by the defendant in violation of custody rights that were actually being exercised by the petitioner" and "state the source of the custody rights, the date of the wrongful conduct, and the child's age at that time." Hague International Child Abduction Convention, Legal Analysis of the Hague Convention on the Civil Aspects of International Child Abduction at III.C [App. C], 51 Fed. Reg. 10494 (Mar. 26, 1986).

## RELEVANT FACTS[3]

Hubert and Agnieszka are Polish citizens. They were married on December 26, 1996 in Rzeszow, Poland. Julia was born on June 18, 1999. Hubert and Agnieszka were granted a no-fault divorce by order of the district court in Rzeszow on October 18, 2006. The order states in relevant part,

> II. [the court] awards parental authority over the minor daughter Julia . . . . to both parents, [and] set[s] the minor's place of residence each time at the place of her mother's - Anieszka Miasik['s] residence;
>
> III. both parents shall be responsible for meeting the costs of the maintenance and upbringing of [Julia]. . . .

Ex. B to Petition (hereinafter "divorce order"). Although Hubert and Agnieszka were divorced in October 2006, the family continued to live together at the same address in Rzeszow for another year, until approximately October 2007 when Agnieszka and Julia moved to a separate apartment in Rzeszow.

---

(e) an authenticated copy of any relevant decision or agreement;
(f) a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;
(g) any other relevant document.

Convention, Art. 8.

[3] The facts set forth in this section are taken from the petition.

In February 2007, Agnieszka sought to have a passport issued for Julia. Hubert objected, fearing that Agnieszka would take Julia to the United States and not return her to Poland. Agnieszka represented to the family court that she was planning only to temporarily visit family in the United States. Based on this assurance, the court granted her request. In late December 2007, Agnieszka took Julia to the United States without notifying Hubert. On January 5, 2008, Agnieszka informed him of the trip and her intention to stay with Julia in the United States for several weeks. In March 2008, Agnieszka again assured Hubert that she intended to return with Julia to Poland. In June 2008, however, Agnieszka informed Hubert that she had secured an apartment for herself and Julia in the United States. Hubert concluded that Agnieszka had no intention of returning with Julia to Poland and, on August 25, 2008, he submitted a formal request for Julia's return with the Polish central authority. Hubert filed this petition on May 22, 2009, contending that he had custodial rights under the divorce order, that he was exercising those rights prior to Julia's removal, and that Julia's removal was wrongful. Pet. ¶ 19. Hubert attached the divorce order to his petition. *See* Pet., Ex. B.

## ANALYSIS

The Preamble to the Convention explains that its purpose is "'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return.'" *Koch* v. *Koch*, 450 F.3d 703, 711 (7th Cir. 2006) (quoting the Convention). To prevent forum shopping, "the determination of whether the removal of the child was wrongful will be made under the law of the country in which the child has his or her habitual residence."[4] *See Kijowska* v. *Haines*, 463 F.3d 583, 586 (7th Cir. 2006)

---

[4] The determination of a child's habitual residence "is to be made on the basis of the everyday meaning of these words rather than the legal meaning that a particular jurisdiction attaches to them." *Kijowska*, 463 F.3d at 586. The Third Circuit has stated that "a child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a degree of

4

(citations and quotation marks omitted). Hubert argues, and Agnieszka tacitly acknowledges, *see* Mot. ¶ 16, that Julia was a habitual resident of Poland prior to the alleged breach of his custody rights. Article 3 of the Convention provides that a removal or retention is wrongful where

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, Art. 3. Rights of custody "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *Id*. They are broadly defined to include "'rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.'" *See Kijowska*, 463 F.3d at 586 (quoting the Convention, Art. 5(a)).

Agnieszka first argues that the petition should be dismissed because Hubert does not allege what custodial rights are being violated or what authority granted him custodial rights. This argument fails because paragraph 19 of the petition specifically alleges that Agnieszka's retention of Julia in the United States is in violation of the rights awarded to him in the divorce order, which states that Agnieszka and Hubert are to share parental authority. Second, Agnieszka argues that Hubert has failed to plead facts sufficient to maintain a claim that his rights of custody were violated because the petition also alleges that the Polish district court set Julia's residence "each time at the place of her mother's" and that the Polish family court issued Julia a passport over Hubert's objection. Agnieszka's argument implies that Hubert's right of

---

settled purpose for the child perspective." *Karkkainen* v. *Kovalchuk*, 445 F.3d 280 (3d Cir. 2006) (citations and quotation marks omitted), cited with approval by the Seventh Circuit in *Kijowska*, 463 F.3d at 589.

parental authority is not a right of custody within the meaning of the Convention, and that if it is a right of custody, it could not have been violated by her retention of Julia in the United States. Accordingly, the pertinent question appears to be whether a shared right of parental authority is a custody right under Polish law. Agnieszka's motion fails to present any legal authority relevant to such a determination.[5] Therefore, the court denies the motion to dismiss.

Agnieszka also moves for a more definite statement under Fed. R. Civ. P. 12(e), arguing that the petition is vague and ambiguous because no specific violation of a custody right is alleged. As discussed above, Hubert has sufficiently identified the right of custody allegedly violated. Moreover, whether Agnieszka's retention of Julia is in violation of Polish law is a conclusion of law which need not be alleged. Accordingly, the Rule 12(e) motion is also denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Agnieszka's motion [#25] is denied. The case is set for a status hearing and a scheduling conference on September 8, 2009 at 9:30 a.m.

Dated: August 20, 2009            Enter: _____
                                  JOAN HUMPHREY LEFKOW
                                  United States District Judge

---

[5] Although the court need not make such a determination at this stage of the proceedings, the court recognizes that Hubert does have some authority for his position. *See Skrodzki* v. *Skrodzki*, No. 06-cv-3428, 2007 WL 1965391 (E.D.N.Y. July 2, 2007) (granting summary judgment to petitioner and ordering the return of his children to Poland because where children were to reside with mother but parental authority was shared, Polish law required parents to resolve vital matters, including a child's place of residence, jointly).